IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| GARY L. SMITH, JR., #432-339, | : |
| Petitioner | : |
| v. | :   CIVIL ACTION NO. CCB-16-2956 |
| JOHN WOLFE, WARDEN, and<br>The ATTORNEY GENERAL OF THE<br>  STATE OF MARYLAND, | :<br><br>: |
| Respondents | : |

## MEMORANDUM

Gary L. Smith, Jr. filed this timely, self-represented petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, attacking his 2014 convictions in the Circuit Court for Wicomico County, Maryland for second-degree assault of a police officer, resisting arrest, rogue and vagabond, theft, and related offenses.[1]  (ECF 1). Respondents, the Warden of Eastern Correctional Institution where Smith is confined and the Attorney General of the State of Maryland, filed an answer (ECF 6) to which Smith has replied.[2]  (ECF 8).

Having reviewed the parties' submissions, the court finds no need for an evidentiary hearing.  *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2016); *see also Fisher v. Lee*, 215 F. 3d 438, 455 (4th Cir. 2000) (petitioner did not show he was entitled to an evidentiary hearing under 28 U.S.C. §2254(e)(2)).

---

[1] Smith's subsequently-filed motion for leave to proceed in forma pauperis (ECF 3) shall be granted.

[2] Smith also moves for appointment of counsel. (ECF 8 at p. 1; ECF 9).  Under Rule 8(c) of the Federal Rules Governing §2254 Habeas Corpus cases, "[i]f an evidentiary hearing is required the judge shall appoint counsel for a petitioner who qualifies for the appointment of counsel."  Having determined this case does not require an evidentiary hearing, Smith's requests for counsel are denied.

For the reasons set forth herein, the court shall DENY and DISMISS the petition with prejudice and SHALL NOT ISSUE a certificate of appealability.

## BACKGROUND

As outlined by the Court of Special Appeals of Maryland, on April 28, 2014, three police officers responding to a report that someone meeting Smith's description was "looking into car windows" and "jiggling door handles." (ECF 6-7, pp. 2-6). The officers found Smith asleep inside a black Honda. Once alerted to the officers' presence, Smith awoke and moved his hands under the driver's seat. *Id*. After Smith refused orders to stop this movement, the officers drew weapons and ordered Smith out of the vehicle. *Id*. Smith exited the car, initially complied with directives, then shoved one of the officers and fled. *Id.* Smith was caught and resisted arrest. During this process, several items fell from his person. *Id*. During a search incident to Smith's arrest, police recovered a driver's license that had been reported stolen and 55 golden dollars that were the property of the owner of the black Honda. *Id*. The owner of the black Honda testified that Smith did not have permission to be in the vehicle and that the vehicle's glove compartment, where the coins had been stored, had been "broken." *Id*. Smith filed a motion to suppress the evidence seized by the police, but this motion was denied on September 19, 2014. (ECF 6-2, pp. 35-36).

On October 14, 2014, Smith was tried before a jury. (ECF 6-1; 6-3; 6-7). Smith was found guilty of two counts of second-degree assault of a police officer, failure to obey a reasonable and lawful order, resisting arrest, two counts of rogue and vagabond, theft under $100, malicious destruction of property under $1000, and theft under $1000, and was sentenced to serve ten years and eleven months' incarceration. (*Id.*).

## PROCEDURAL HISTORY

On direct appeal, Smith raised the following questions:

    (1)  Did the trial court err in denying the motion to suppress?

    (2) Was there sufficient evidence to convict him of failure to obey a reasonable and lawful order to prevent a disturbance of the peace?

    (3)  Was there sufficient evidence to convict him of malicious destruction of property?  and

    (4)  Did the trial court impose an illegal sentence by failing to merge:
        a.  the sentence for failure to obey a lawful order into resisting arrest;
        b.  each of the sentences for rogue and vagabond into its corresponding conviction for theft?
        c.  the sentence for malicious destruction of property into the rogue-and-vagabond conviction relating to Richard Strautz?

(ECF 6-4).  In its September 3, 2015 unreported opinion, the Court of Special Appeals affirmed Smith's judgment of conviction.  (ECF 6-7).  Smith's request for *certiorari* review as to whether the trial court erred in denying his motion to suppress (ECF 6-8) was denied by the Maryland Court of Appeals on December 21, 2015.[3]  *Smith v. State,* 445 Md. 489 (2015).

    On March 29, 2016, Smith filed a petition for post-conviction relief in the Circuit Court for Wicomico County.  (ECF 6-1; ECF 6-9).  On July 29, 2016, the post-conviction court held a hearing and denied relief in a statement of reasons dictated from the bench.  (ECF 6-9).  The ruling was entered on August 8, 2016.  Smith did not file a timely application for leave to appeal the ruling, which became final on September 7, 2016.[4]

## CLAIMS PRESENTED HERE

    Smith now asserts that (1) the trial court erred by denying his motion to suppress; and (2) trial counsel was ineffective for (a) failing to argue against any finding of an illegal *Terry*[5] stop

---

[3] Smith's judgment became final for direct appeal purposes on March 21, 2016, when the time for seeking review in the Supreme Court of the United States expired.  *See* Sup. Ct. Rule 13.1 (requiring petition for writ of certiorari to be filed within 90 days of the date of judgment from which review is sought).

[4] *See* Md. Rule 8-204 (application for leave to appeal to be filed within 30 days of date of judgment from which appeal is taken).

[5] *See Terry v. Ohio*, 392 U.S. 1, 8 (1968).

and (b) failed to argue the State's lack of an attenuation analysis. (ECF 1 at 3, 32). Respondents argue that Smith's Fourth Amendment challenge does not present a cognizable basis for federal habeas corpus relief, and his ineffective assistance claims are procedurally defaulted because Smith failed to seek leave to appeal the denial of his state post-conviction petition. (ECF 6).

## STANDARD OF REVIEW

An application for writ of habeas corpus may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). The federal habeas statute at 28 U.S.C. § 2254 sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). The standard is "difficult to meet," and requires courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted); *see also White v Woodall,* __ U.S.__, __, 134 S. Ct 1697, 1702 (2014), quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011) (state prisoner must show state court ruling on claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254 (d). A state adjudication is contrary to clearly established federal law under § 2254(d)(1) where the state court 1) "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or 2)

"confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000).

Before applying this standard, the court must determine whether each claim is cognizable for federal review and, if deemed cognizable, whether the claim has been fully presented for adjudication in the state courts. Smith failed to meet this first threshold as to his Fourth Amendment claim, and cannot meet the second requirement for his claims concerning ineffective assistance of counsel.

## ANALYSIS

Smith's first claim centers on the constitutionality of the seizure of evidence obtained by police at the time of his arrest, and is therefore premised on alleged violations of the Fourth Amendment. The law concerning Fourth Amendment claims in federal habeas corpus proceedings is well established. "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that the evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U. S. 465, 494 (1976) (footnotes omitted).

> [A] district court, when faced with allegations presenting Fourth Amendment claims, should, under the rule in *Stone v. Powell, supra*, first inquire as to whether or not the petitioner was afforded an opportunity to raise his Fourth Amendment claims under the then existing state practice. This may be determined, at least in this Circuit, from the relevant state statutes, the applicable state court decisions, and from judicial notice of state practice by the district court. Second, . . . when the district court has made the 'opportunity' inquiry, it need not inquire further into the merits of the petitioner's case, when applying *Stone v. Powell, supra*, unless the prisoner alleges something to indicate that his opportunity for a full and fair litigation of his Fourth Amendment claim or claims was in some way impaired.

5

*Doleman v. Muncy*, 579 F.2d 1258, 1265 (4th Cir. 1978); *see also Mueller v. Angelone*, 181 F.3d 557, 570 n.8 (4th Cir. 1999) (indicating continued application of *Stone* post-AEDPA); *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) ("*Stone v. Powell* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court.").

The record shows that Smith was provided with the opportunity to fully litigate his Fourth Amendment claims challenging the validity of his seizure (and the ensuing search) by filing and arguing through counsel a motion to suppress. After extensive argument and testimony during an evidentiary hearing, the motion was denied. (ECF 6-2). The issue was raised on direct appeal and in a request for *certiorari* review. (ECF 6-4, pp. 13-16; ECF 6-8). The Court of Special Appeals, after thoroughly examining the facts surrounding the seizure of the evidence, the testimony, and the legal reasoning of the circuit court, upheld the denial of the motion to suppress, stating as follows:

> *Suppression Hearing*
>
> Prior to trial, defense counsel moved to suppress evidence that was recovered as a result of an illegal stop, arrest, and search. On April 28, 2014, around 5:40 a.m., Officer Justin Aita was dispatched to the Tide Mill Apartments in response to a 911 call that reported a "white male wearing a black shirt, black jacket, looking into car windows, jiggling car handles." Upon arrival, Aita exited his vehicle and patrolled the area on foot. During this patrol, PFC Jason Sander "found a subject meeting that description asleep in the driver's seat" of a black Honda parked in the apartment complex parking lot. Aita approached the vehicle on the passenger side and attempted to wake the individual, who he identified in court as Smith, by knocking on the windows. At the same time, Sander approached the driver's side of the vehicle, and PFC Dimare approached the front of the vehicle.
>
> When Smith woke up, the officers identified themselves as police and asked Smith to get out of the vehicle. Smith "began to motion underneath his seat" and the officers "asked him numerous times to not do that." "[A]fter maybe the fifth and eighth time of motioning underneath the seat, [the officers] all drew [their]

weapons and ordered him out of the car" out of concern for their safety. After several minutes, Smith finally unlocked the door and exited the vehicle. Aita instructed Smith 'to stand up and out his hands on top of the vehicle." At first, Smith seemed like he was going to comply, and he "made a motion to put his hands on top of the car[,] but then, "he turned, pushed PFC Sander and began to run away from" the officers.

The officers chased after Smith and "told him he was under arrest numerous times for pushing PFC Sander[.]" The officers caught up to Smith about 30 feet from the vehicle and placed him under arrest. When Smith was being placed under arrest, several items, which were the subject of the motion to suppress, fell from his person onto the ground.

Aita testified that Smith was ordered out of the vehicle because the officers "were in fear that he was going to pull a gun out and shoot [them]" and "getting somebody out of the car in that situation takes them away from possibly reaching under the seat and getting a weapon out of the vehicle." Aita also explained that the officers approached the car to do a field interview and that they did not intend to detain or arrest Smith until he pushed Sander.

In denying the motion to suppress, the court explained:

> Whether or not there had been an illegal stop, given the fact that the defendant doesn't have the right to contest an illegal stop and that he committed – he did commit a crime at that point, the crime of assault, that the police certainly had the right to continue to pursue him, and that any contraband or evidence that was collected by them as a result of his attempt to run, to flee, was legally seized.

*Trial*

Aita testified, again, at trial and gave the same testimony he gave at the suppression hearing, with the following additions. Aita explained that Smith gave Sander "a good push," which caused Sander to stumble backwards and lose his balance. Then, Smith began to run toward the apartment complex, and Aita screamed at Smith to get on the ground and put his hands behind his back because he was under arrest. The officers caught up to Smith and got him on the ground, but were unable to handcuff Smith because he was actively fighting the officers. Sander explained that Smith was face down on the ground "attempting to push up off the ground like in a push up style. He was flailing about with his upper body, [and] moving his arms back and forth[.]"

During the struggle, Smith "was yelling the whole time" and asked why he was being arrested. Sander responded that he was being arrested for assault. The struggle lasted for about one minute before the officers were able to place Smith in handcuffs. After Smith was handcuffed, he calmed down, and Sander observed

7

a gentleman watch the incident from a second floor balcony.  Aita and Sander both testified that Smith did not have permission to touch them.

While Smith was being placed in handcuffs, "multiple materials started falling out of his pockets, change and stuff like that, his wallet.  And afterward, there was just change and his property everywhere all over the ground right where the struggle ended."  Thereafter, Sander conducted a search incident to arrest and opened Smith's wallet to look for Smith's identification.  Sander found Smith's Maryland driver's license, as well as a Maryland driver's license belonging to a man named Richard James Strautz.

On April 25, 2014, three days before the above incident, Strautz reported to police that several items were missing from his vehicle.  These items included a change purse, a black baseball cap with a red letter A, GPS, and his wallet, which stored his driver's license, Best Buy gift card, Lowe's card, and his bankcard.*  Strautz explained that he did not give Smith permission to be in his vehicle, that his wallet was in a "closed compartment within the vehicle[,] and that the doors and windows of his vehicle were secured before he went to bed."  Police returned Strautz's license and hat to him after they recovered the items from Smith.

Police identified Paul Boyd as the owner of the black Honda Civic where Smith was found sleeping.  Boyd was a resident of the Tide Mill Apartments, and he recalled that a police officer woke him up on the morning of April 28, 2014.  Boyd went outside, saw Smith on the ground, and saw the coins, around 55 golden dollars, which he kept in his glove compartment, in Smith's pocket.  Boyd inspected his vehicle and discovered that his glove compartment "was broken, basically like on the floor."  Boyd confirmed that the glove compartment was closed and operable the night before, that he locked the doors to his car and rolled up all the windows, and that he did not give Smith permission to be in his vehicle or take his coins.

Additional facts will be discussed below as they pertain to the questions presented.

### DISCUSSION

### I.

Smith argues that he "was subjected to an unlawful arrest when he pushed Sander" and that because he "was subjected to an unlawful arrest, he was justified in using force to resist the arrest."  Accordingly, Smith contends, "the push did not cure the taint of the initial illegality, and all evidence subsequently obtained must be suppressed as fruit of the poisonous tree."  Finally, Smith argues that even if the assault constituted a new crime, the new crime was not attenuated from the initial illegality, and even if it were, the court erred in admitting evidence of any crime other than the new crime itself.

8

The State responds that Smith was not arrested until after he pushed Sander and, therefore, "Smith was not privileged to push PFC Sander" because a suspect in Maryland "has no right to resist an illegal stop or frisk." The State also contends that Smith's attenuation arguments are not preserved on appeal.

We agree with the State that Smith's attenuation arguments are not preserved on appeal, but even if they were preserved, we would still conclude that the trial court did not err in denying the motion to suppress.

"In reviewing the ruling of the suppression court, we must rely solely upon the record developed at the suppression hearing." *Briscoe v. State,* 422 Md. 384, 396 (2011) (citing *Lee v. State,* 418 Md. 136, 148 (2011)).

> We view the evidence and inferences that may be drawn therefrom in the light most favorable to the party who prevails on the motion, here, the State. We give deference to the first-level factual findings made by the suppression court, and we accept those findings unless shown to be clearly erroneous.

*Id.* (internal citations omitted). "We, however, make an independent appraisal of the constitutionality of a search, 'applying the law to the facts found in each particular case.'" *Id.* (quoting *Elliott v. State,* 417 Md. 413, 428 (2010)).

"The Fourth Amendment, which is applied to the states through the Fourteenth Amendment, protects against unreasonable searches and seizures." *Holt v. State,* 435 Md. 443, 458 (2013) (citing *Lewis v. State,* 398 Md. 349, 360-61 (2007)). "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a seizure of persons within the meaning of [the Fourth Amendment]." *Id.* at 458 (quoting *Whren v. United States,* 517 U.S. 806, 809-10 (1996)) (internal quotation marks omitted). On appeal, we must decide whether the seizure was a Terry stop or an arrest at the time when Smith pushed Sander.

"A '*Terry*' stop refers to a brief investigative detention which is justified when police have an articulable, reasonable suspicion that criminal activity may be afoot." *Elliott v. State,* 417 Md. 413, 429 n.3 (2010) (quoting *Terry v. Ohio,* 392 U.S. 1, 30 (1968)), "The *Terry* stop is 'less intrusive than a formal custodial arrest,' is limited in duration, and purpose and 'can only last as long as it takes a police officer to confirm or dispel his suspicions.'" *Id.* quoting *Swift v. State,* 393 Md. 139150 (2006)). "At times, [however,] arrest-level force may be warranted in making a[n investigatory] stop, 'to protect officer safety or to prevent a suspect's flight.'" *Riggins v. State*, 223 Md. App. 40, 62-63 (2015) (quoting *Elliott*, 417 Md. at 429).

"We have defined an arrest in general terms as the detention of a known or suspected offender for the purpose of prosecuting him for a crime." *Belote v.*

9

*State,* 411 Md. 104, 114 (2009) (quoting *Bouldin v. State,* 276 Md. 511, 516 (1976)) (Internal quotation marks omitted). "[I]n order for there to be an arrest . . . there must always be an intent on the part of one to arrest the other and an intent on the part of such other to submit." *Id.* at 114-15 (Internal quotation marks omitted). "Ordinarily, therefore, there can be no arrest where there is no restraint or where the person sought to be arrested is not conscious of any restraint." *Id.* at 115. Accordingly, "[w]hen a police officer directs a person to stop but the person instead flees, there is neither restraint nor submission to custody." *Riggins,* 223 Md. App. At 62.

"In determining whether an investigatory stop is in actuality an arrest requiring probable cause, courts consider the totality of the circumstances." *Riggins,* 223 Md. App. at 62 (quoting *In re David S.,* 367 Md. 523, 535 (2002)) (Internal quotation marks omitted). "'Not every seizure of a person is elevated automatically into an arrest, simply because the police used measures . . . more traditionally associated with arrest than with investigatory detention.'" *Id.* (quoting *Barnes v. State,* 437 Md. 375, 391 (2014)) (internal quotation marks omitted).

Smith argues that he was under arrest when "three officers pointed their guns at [him] and ordered him out of the car, and [he] submitted to the show of authority by exiting the car[.]" We disagree. The testimony presented at the suppression hearing was that the officers asked Smith to exit the vehicle and to place his hands on the car. Even though Smith exited the car voluntarily, he did not submit to the police show of authority because, instead of putting his hands on the vehicle, he turned around and pushed Sanders. Smith then ran away from police, which as stated above, is "neither restraint nor submission to custody." *Riggins,* 223 Md. App. At 62. The testimony also indicated that the officers only pulled out their weapons for the purpose of officer safety and that as soon as the officers determined that Smith was unarmed, they re-holstered their weapons. The stop was limited in duration, and Aita testified that he did not intend to arrest Smith until after Smith pushed Sander. In considering the totality of the circumstances, the testimony elicited at the suppression hearing supports the conclusion that the seizure was an investigatory stop and that Smith was not under arrest at the time he pushed Sander.

Regardless of whether police had reasonable articulable suspicion sufficient to justify the investigatory stop, an individual may not use force to resist an illegal stop. *See Hicks v. State,* 189 Md. App. 112, 125 (2009) ("There is no privilege to resist either an unlawful *Terry* stop or an unlawful frisk." (Internal citations omitted)). Accordingly, when Smith pushed Sander, he was not resisting an illegal arrest, as he claims, but rather, Smith committed an assault, which gave the officers probable cause to arrest him.

. . . .


>   In the instant case, while the officers were placing Smith under arrest for assaulting Sander, the items that the defense sought to suppress fell from Smith's person to the ground and, at that point, were in plain view in a public location where the officers were legally permitted to be.  The evidence, therefore, was obtained during a lawful arrest, notwithstanding that the initial stop was arguably illegal.  The court, therefore, did not abuse its discretion in denying Smith's motion to suppress in a situation where Smith committed a new crimne, which was an intervening circumstance that attenuated the taint from any prior illegal police activity.  *See State v. Holt*, 206 Md. App. 539, 565 (2012) (holding that "a new crime, even if causally linked to illegal activity on behalf of law enforcement, is an intervening circumstance that attenuates the taint from that illegal [police] activity" and that "[e]vidence of the new crime should not be suppressed"), *aff'd on other grounds,* 435 Md. 443 (2013).
>   ___
>
>   \*   Sander testified that Smith was wearing a black cap with a red letter A on it when he was arrested on the morning of April 28, 2014.

*Smith v. State,* No. 2229 (Ct. Spec. App. Md., Sept. 3, 2015) at pp. 2-10.  (ECF 6-7).

Smith had a full and fair opportunity to litigate the legality of the search, and Maryland's intermediate appellate court found no violation under the Fourth or Fourteenth Amendments.  Thus, his Fourth Amendment claim provides no basis for federal habeas corpus relief.

<center>Ineffective Assistance of Counsel</center>

Smith asserts counsel failed to argue against any finding of an illegal *Terry* stop and to argue the State's lack of an attenuation analysis.  (ECF 1 at 3, 32).  Respondents note that Smith unsuccessfully asserted these claims at his post-conviction hearing, but failed to seek leave to appeal the denial of the claims, barring their consideration here under the procedural default doctrine.  (ECF 6 at pp. 10-11).  In response, Smith argues that he is not knowledgeable in the law and was not afforded counsel to pursue leave to appeal the denial of post-conviction relief.  (ECF 8 at pp. 3-5).  He indicates that had he known, he "clearly would have filed an Application for Leave to Appeal in the time allotted, as the current filing took place within the time provided for that filing."  (*Id.* at p. 5).

Where a petitioner has failed to present a claim to the highest state court with jurisdiction to hear it, whether it be by failing to raise the claim in post-conviction proceedings or on direct appeal, or by failing to timely note an appeal, the procedural default doctrine applies. *See Coleman v. Thompson*, 501 U. S. 722, 749-50 (1991) (failure to note timely appeal); *Murray v. Carrier*, 477 U. S. 478, 489-91 (1986) (failure to raise claim on direct appeal); *Murch v. Mottram*, 409 U. S. 41, 46 (1972) (failure to raise claim during post conviction); *Bradley v. Davis*, 551 F. Supp. 479, 481 (D. Md. 1982) (failure to seek leave to appeal denial of post conviction relief). A procedural default also may occur where a state court declines "to consider the merits [of a claim] on the basis of an adequate and independent state procedural rule." *Yeatts v. Angelone*, 166 F.3d 255, 260 (4th Cir. 1999).

If a procedural default has occurred, a federal court may not address the merits of a state prisoner's habeas claim unless the petitioner can show (1) both cause for the default and prejudice that would result from failing to consider the claim on the merits,[6] or (2) that failure to consider the claim on the merits would result in a miscarriage of justice, *i.e.* the conviction of one who is actually innocent. *See Murray*, 477 U.S. at 495-96; *Breard v. Pruett*, 135 F.3d 615, 620 (4th Cir. 1998); *Schlup v. Delo*, 513 U. S. 298, 314 (1995) (even where petitioner fails to show cause and prejudice for procedural default, court must still consider whether the merits of a claim must be addressed in order to prevent a fundamental miscarriage of justice).

Smith claims that his ignorance of the law caused the default. This does not constitute cause, but even if it did, Smith nonetheless cannot establish prejudice resulting from such default. The post-conviction court found that the appellate court fully analyzed the factual and legal questions involved in Smith's arrest and the ensuing search and seizure, including the

---

[6] "Cause" consists of "some objective factor external to the defense [that] impeded counsel's efforts to raise the claim in state court at the appropriate time." *Id.* (quoting *Murray*, 477 U.S. at 488).

question of attenuation, thus precluding further examination of these issues on collateral review. (ECF 6-9 at p. 2). Given the exhaustive appellate examination of these issues, this court cannot conclude that Smith will suffer prejudice if his ineffective assistance claims are not examined under federal habeas corpus standards of review.

Further, Smith cannot avail himself of the "miscarriage of justice" exception to the procedural default doctrine. A petitioner may use an actual innocence claim to excuse the procedural default of a separate constitutional claim upon which he requests habeas relief. *Murray,* 477 U.S. at 496. "[When] a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." *Id.*; *see also Reid v. True*, 349 F.3d 788, 806 (4th Cir. 2003). A petitioner who wishes to use a claim of actual innocence as a gateway to raising an otherwise defaulted constitutional claim must demonstrate by a preponderance of the evidence that a reasonable juror could not have convicted him or her in light of the new evidence. *See Buckner v. Polk*, 453 F.3d 195, 199-200 (4th Cir. 2006). Smith cannot meet this standard of actual innocence based on the record before this court.

## CONCLUSION

Having failed to present a cognizable Fourth Amendment claim or to overcome the procedural default of his ineffective assistance of counsel claims, Smith is not entitled to federal habeas relief. Further, there is no basis upon which to find constitutional deficiencies in the state court proceedings.

While he may appeal this determination, he must first obtain a certificate of appealability ("COA"). A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner "must demonstrate that

reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (citation and internal quotation marks omitted), or that "the issues presented are adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because there has been no substantial showing of the denial of a constitutional right, this court declines to issue a COA.[7]

A separate order follows.


January 23, 2017                                                      _____/S/_____
Date                                                                              Catherine C. Blake
                                                                                       United States District Judge

---

[7] Smith may request a COA from the United States Court of Appeals for the Fourth Circuit.